IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| **J&J SPORTS PRODUCTIONS, INC.,** as Broadcast Licensee of the September 17, 2011 "Star Power": Mayweather/Ortiz Fight Program, <br><br>   Plaintiff, <br><br> v. <br><br> **MARIA OLIVIA RIVERA a/k/a MARIA O. RIVERA,** individually, and d/b/a **HORIZON NITE CLUB,** <br><br>   Defendant. | § § § § § § § § § § § § § § § § §  EP-14-CV-00343-KC |

## ORDER

On this day, the Court considered Plaintiff's Motion for Final Default Judgment & Brief in Support (the "Motion"), ECF No. 8, in the above-captioned case (the "Case"). After considering Plaintiff's arguments, the record, and the applicable law, the Court **GRANTS** the Motion in part.

### I.   BACKGROUND

Plaintiff is a licensing company with the exclusive right to sub-license the closed-circuit telecast of the September 17, 2011, "Star Power": Floyd Mayweather, Jr. v. Victor Ortiz, Championship Fight Program ("the Event") at closed-circuit locations throughout Texas.  Pl.'s Original Compl. ("Complaint") 2, ECF No. 1; *see also* Mot. Ex. A-1, at 12, ECF No. 8-1.[1] Broadcasts of the Event can only be exhibited in a commercial establishment if the establishment enters into a contractual relationship with Plaintiff.  Compl. 2.

---

[1] The Court uses the CM/ECF generated page numbers for all citations to the record in order to assist the reader.

1

On September 17, 2011, Maria Olivia Rivera ("Defendant") owned, operated, and supervised Horizon Nite Club (the "Establishment"). *Id.* at 1-2. Plaintiff claims that Defendant displayed the Event to patrons in the Establishment without authorization and without paying the proper licensing fee. *Id.* at 3. Furthermore, Plaintiff alleges that the telecast was transmitted via satellite and was electronically coded, or "scrambled," so that Defendant had to decode it using electronic decoding equipment in order to view it clearly. *Id.*; *see also* Mot. Ex. A, at 6-7, ECF No. 8-1.

Plaintiff filed suit on September 12, 2014. *See* Compl. Plaintiff asserts that Defendant violated the Federal Communications Act ("FCA"), 47 U.S.C. §§ 553 and 605, by unlawfully and willfully intercepting and publishing the telecast of the Event on September 17, 2011. *Id.* at 4. Plaintiff seeks statutory damages under 47 U.S.C. §§ 553 and 605. *Id.* Specifically, Plaintiff seeks up to $10,000.00 for Defendant's unauthorized reception of cable service under 47 U.S.C. § 553(c)(3)(A)(ii), and up to $50,000.00 for Defendant's allegedly willful, unauthorized reception of cable service under 47 U.S.C. § 553(c)(3)(B). *Id.* at 4. Further, Plaintiff requests up to $10,000.00 for Defendant's allegedly unauthorized publication or use of communications pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II), and up to $100,000.00 for Defendant's allegedly willful and commercially advantageous publication or use of communications pursuant to 47 U.S.C. § 605(e)(3)(C)(ii). *Id.*

Plaintiff also seeks an award for full costs and expenses of this action, including attorneys' fees pursuant to 47 U.S.C. §§ 553(c)(2)(C) and 605(e)(3)(B)(iii), in the amount of one-third of recovery, or alternatively the hourly time presented, along with attorneys' fees for post-trial and appellate services. *Id.* at 5; *see* Mot. Ex. B, at 26-32, ECF No. 8-1.

Finally, Plaintiff seeks a permanent injunction to prevent Defendant from exhibiting

any unauthorized or unlicensed programs in violation of the FCA. Compl. 5.

Defendant was personally served with the summons in this Case on October 23, 2014. *See* Summons in a Civil Action 2, ECF No. 5; Mot. 2. As of the date of this Order, Defendant has not answered or filed a responsive pleading. Plaintiff now seeks a default judgment pursuant to Federal Rule of Civil Procedure 55. *See* Mot.; Fed. R. Civ. P. 55.

## II.     DISCUSSION

### A.     Standard

The clerk of the court shall enter default if a party fails to plead or otherwise defend, and the moving party shows that failure by affidavit or otherwise. Fed. R. Civ. P. 55(a). After the clerk enters default, a party may move for a default judgment. *See* Fed. R. Civ. P. 55; *see also N. Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). A court enters default judgment only if there is "a sufficient basis in the pleading for the judgment entered." *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

"The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Id*. When reviewing a motion for default judgment, a court takes the plaintiff's well-pleaded factual allegations as true, but not damages. *United States ex rel. M-CO Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987).

Rule 55(b) gives a court discretion to convene an evidentiary hearing on the issue of damages. Fed. R. Civ. P. 55(b)(2)(B). Generally, a court should hold an evidentiary hearing to ascertain the amount of damages. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993); *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). However, a hearing is not necessary if "the amount claimed is a liquidated sum or one capable of mathematical

calculation." *Freeman*, 605 F.2d at 857.

### B. The Federal Communications Act

By the Complaint, Plaintiff contends that Defendant violated § 553 of the FCA by intercepting the communication of the Event on September 17, 2011. Compl. 2-5. Plaintiff further asserts that Defendant published the Event to patrons within Defendant's Establishment, thereby violating § 605 of the FCA. *Id.*

Section 553 of the FCA punishes any person who "intercept[s] or receive[s] or assist[s] in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1). Section 605 provides that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person." *Id.* § 605(a). Though these statutory provisions seemingly cover the same conduct, § 553 prohibits interception of a communication "offered over a cable system," while § 605 prohibits interception of any "radio communication." *See id.* §§ 553(a)(1), 605(a). This distinction is significant, as communicating "by wire" and "by radio" are distinct and separately defined means of transmission. *See J&J Sports Prods., Inc. v. Mandell Family Ventures, L.L.C.*, 751 F.3d 346, 351-53 (5th Cir. 2014). Accordingly, "§ 605 deals with communications traveling through the air (via radio), and § 553 covers communications traveling over cable wire." *Id.* at 352-53 (all alterations removed).

Thus, to recover for a violation under § 605 of the FCA, a plaintiff must prove that a defendant, without authorization, intercepted or otherwise unlawfully appropriated a radio

4

communication and published it to any person. *See* 47 U.S.C. § 605; *Mandell Family*, 751 F.3d at 352-53. To recover for a violation under § 553, however, a plaintiff must show that a defendant, without authorization, intercepted or received communications over a cable system. *See* 47 U.S.C. § 553(a)(1); *Mandell Family*, 751 F.3d at 352-53. Under either section, a plaintiff can request additional fines if it shows that a defendant committed these violations willfully and for purposes of commercial advantage. *See* 47 U.S.C. §§ 553(b)(2), 605(e)(3)(C)(ii).

Defendant's default serves as an admission of well-pleaded facts. *See Nishimatsu Constr. Co.*, 515 F.2d at 1206. Consequently, Defendant's default serves to admit that Plaintiff had the exclusive right to sub-license the Event on September 17, 2011. Compl. 2. Defendant, by her default, also admits that she intercepted and published the Event without authorization, and that she acted willfully and for purposes of commercial advantage. *Id.* at 3; *see* 47 U.S.C. §§ 553(b)(2), 605(e)(3)(C)(ii). Defendant additionally admits that the Event was communicated via an interstate satellite transmission. Compl. 3.

Further, Plaintiff's evidence establishes that Defendant sold food and beverages during the Event for direct commercial advantage. Mot. Ex. A, at 7; Mot. Ex. A-2, at 21, ECF No. 8-1; *see J & J Sports Prods., Inc. v. Palma*, Civil Action No. 3:11-CV-01776-L, 2012 WL 1853519, at *1 (N.D. Tex. May 21, 2012) (accepting both the facts in the complaint and evidence supporting the plaintiff's motion for default judgment as true); *Santana v. First Am. Solutions, LLC*, No. EP-11-cv-186-PRM, 2011 WL 3666591, at *1 (W.D. Tex. June 27, 2011) (stating a court has the discretion to rely on evidence to determine whether or not to grant a default judgment). In sum, the undisputed facts and evidence provide a sufficient basis to hold that Defendant unlawfully intercepted and published without

authorization an interstate satellite transmission. The radio communications protected under § 605 include transmissions by satellite. *DirectTV, Inc. v. Seijas*, 508 F.3d 123, 125 (3rd Cir. 2007); *DirectTV, Inc. v. Webb*, 545 F.3d 837, 844 (9th Cir. 2006). The Court therefore finds that Defendant violated § 605 of the FCA. *See Nishimatsu*, 515 F.2d at 1206 ("There must be a sufficient basis in the pleadings for the judgment entered."). Plaintiff has not, however, pleaded sufficient facts to show that Defendant intercepted or received communications over a cable system as required for liability under § 553.[2] *See* 47 U.S.C. § 553(a)(1); *Mandell Family*, 751 F.3d at 352-53. Therefore, the Court grants Plaintiff's request for default judgment against Defendant under § 605 of the FCA only.

### C. Plaintiff's Requested Damages

Having determined that Defendant violated § 605 of the FCA, the only remaining question is the appropriate amount of damages. The Court finds that a hearing is unnecessary on the issue of damages because they are capable of mathematical calculation from Plaintiff's exhibits and affidavits. *See Freeman*, 605 F.2d at 857. Moreover, the amount of attorneys' fees and costs is likewise calculable from Plaintiff's attorney's affidavit. *See id*.

When a plaintiff meets the burdens of proving violations of § 605, a plaintiff may choose to collect either actual or statutory damages. 47 U.S.C. § 605(e)(3)(C)(i). For violations of § 605, a plaintiff can collect a statutory amount ranging from $1,000 to $10,000. *Id.* § 605(e)(3)(C)(i)(II). A court uses its discretion to determine the specific amount that a plaintiff recovers. *Id*. A court also has discretion to increase these statutory damages by an amount not more than $100,000 for each unauthorized communications

---

[2] The Court notes that while the Complaint seeks damages under both § 553 and § 605, Plaintiff's Motion only seeks a default judgment under § 605. *Compare* Compl. 4-5, *with* Mot. 4.

violation if it "finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." *Id.* § 605(e)(3)(C)(ii). A prevailing plaintiff can also recover full costs, including reasonable attorneys' fees. *Id.* § 605(e)(3)(B)(iii).

Here, Plaintiff's Complaint seeks the maximum amount of $10,000 in statutory damages under § 605. Compl. 4. For willful and commercially advantageous damages, the Complaint also seeks the maximum amount of $100,000. *Id.* Plaintiff further requests a permanent injunction enjoining Defendant from "any future exhibition of unauthorized or unlicensed programs and any violation of 47 U.S.C. §§ 553 or 605." *Id.* at 5. Finally, the Complaint asks for full costs and expenses, including reasonable attorneys' fees. *Id.*

### 1.     Statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II)

As noted immediately above, Plaintiff seeks $10,000.00 in statutory damages under § 605(e)(3)(C)(i)(II). *Id.* at 4; Mot. 5. "[C]ourts have developed two approaches for determining statutory damages under this provision." *Joe Hand Promotions, Inc. v. Garcia*, 546 F. Supp. 2d 383, 386 (W.D. Tex. 2008). "The first is to award damages based on the number of patrons in the establishment at the time of the violation, and the second is to award a flat sum for damages." *Id.* To calculate a damage amount under the first approach, a court normally trebles the broadcasting fee to account for "money saved by not complying with the law, as well as any profits made from food and drink sales associated with customers who stayed and watched the fight." *Id.*

Plaintiff's evidence shows that its licensing fee for the Event was based on the venue's seating capacity. Mot. Ex. A, at 6; Mot. Ex. A-3, at 24, ECF No. 8-1. Here, there is no indication as to the Establishment's maximum seating capacity on September 17, 2011.

However, according to the auditor's affidavit, approximately five (5) people were inside the Establishment during the telecast of the Event. *See* Mot. Ex. A-2, at 19. Venues which seat between 0 and 100 patrons were required to pay a licensing fee of $2,200.00 to legally purchase the Event. Mot. Ex. A-3, at 24. Thus, the Court finds that Plaintiff is entitled to *at least* $2,200.00 in statutory damages. *See Garcia*, 546 F. Supp. 2d at 386.

Unlike in *Garcia*, however, where defendants sold food and drink to approximately 65-80 people during the illegally obtained telecast, *see id.*, here, only five individuals were present in Defendant's Establishment during the Event. *See* Mot. Ex. A-2, at 19. Additionally, the auditor's affidavit provides no indication as to how many of these individuals were actually patrons, as opposed to Defendant's own employees. *See id.* Accordingly, the Court finds that trebling the licensing fee to account for "profits made from food and drink sales associated with customers who stayed and watched the fight" would be excessive in the instant Case. *See Garcia*, 546 F. Supp. 2d at 386. Instead, the Court finds that a total award of $2,300 accurately reflects Plaintiff's statutory damages under § 605(e)(3)(C)(i)(II). *See* 47 U.S.C. § 605(e)(3)(C)(i)(II) (noting that a party may collect a sum between $1,000 and $10,000 for each violation "as the court considers just").

### 2. Willfulness damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii)

Plaintiff also requests $50,000.00 in additional damages under § 605(e)(3)(C)(ii) because Defendant's conduct was committed "willfully and for purposes of direct or indirect commercial advantage or private financial gain." Mot. 7-9; 47 U.S.C. § 605(e)(3)(C)(ii). Defendant has admitted Plaintiff's allegation of willful and commercially advantageous conduct by her default. *See* Mot. 7; *Nishimatsu Constr. Co.*, 515 F.2d at 1206. Further, Plaintiff's evidence supports the finding that Defendant's actions were willful. It is highly

unlikely that Defendant accidentally intercepted the transmission of the Event, since the transmission was electronically coded. *See* Compl. 3. After all, "signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems." *Garcia*, 546 F. Supp. 2d at 385 (citing *Time Warner Cable of N.Y.C. v. Googies Luncheonette, Inc.*, 77 F. Supp.2d 485, 490 (S.D.N.Y. 1999)). Thus, Defendant likely intended to intercept and display the transmission.

Plaintiff's evidence also supports its allegation that Defendant's actions were for purposes of direct or indirect commercial advantage. The evidence indicates that Defendant's Establishment broadcasted the Event on multiple televisions, including one "big screen." *See* Mot. Ex. A-2, at 20; *Joe Hand Promotions, Inc. v. Alima*, Civil Action No. 3:13-CV-0889-B, 2014 WL 1632158, at *5 (N.D. Tex. Apr. 22, 2014) (considering number and size of televisions as evidence of willfulness). In addition, Plaintiff's evidence establishes that Defendant sold food and drinks during the Event. *See* Mot. Ex. A, at 7; Mot. Ex. A-2 at 21. Vending food and/or beverages is evidence of commercial advantage. *See*, *e.g.*, *Cotorra Cocina Mexicana & Bar LLC*, 2012 WL 1098446, at *3.

In light of these admissions and evidence, the Court finds that Defendant committed FCA violations "willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). Therefore, Plaintiff deserves an enhanced award.

However, the Court finds that Plaintiff's requested damages of $50,000.00 are clearly excessive under the circumstances of this Case. *See* Mot. 9. In selecting the appropriate amount of enhanced damages to be applied for willfulness, the Court is mindful that the purpose of these damages is to discourage would-be pirates, including Defendant,

from engaging in piracy in the future. *See Garcia*, 546 F. Supp. 2d at 386. However, the Court also recognizes that the purpose of these damages is not to drive Defendant out of business. *See id.* Accordingly, the Court finds that an award of $2,200.00 suffices in deterring Defendant from violating the FCA again, while taking into account Defendant's willful and commercially advantageous actions. *See id.*

### 3. Attorneys' fees

Plaintiff requests attorneys' fees amounting to one-third of the actual and additional damages awarded to Plaintiff for the prosecution of this FCA violation. *See* Mot. 10; Mot. Ex. B, at 27-29. Alternatively, Plaintiff requests the hourly rate for prosecution of the Case. Mot. 10; Mot. Ex. B, at 29. Under § 605(e)(3)(B)(iii), a court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii). As such, Plaintiff's attorneys' fees are mandatory. *See id.*; *Cotorra Cocina Mexicana & Bar LLC*, 2012 WL 1098446, at *4; *Garcia*, 546 F. Supp. 2d at 386. The Court finds that one-third of the actual and additional damages that Plaintiff requests is excessive. *See Garcia*, 546 F. Supp. 2d at 386 (expressing that attorneys' fees must be reasonable to be granted). Under this calculation, the attorneys' fees would amount to $1,500.00, which is one-third of the $4,500.00 combined statutory and enhanced damages award. Instead, the Court calculates the award using the attorney's hourly rate of $250.00. *See* Mot. Ex. B, at 29-30. Because Plaintiff's evidence shows that its attorney spent four hours working on this matter, the Court awards $1,000.00 in attorneys' fees. *See id.*

### 4. Injunctive relief

Finally, Plaintiff requests a permanent injunction under § 605(e)(3)(B)(i). Mot. 10. Under this section, the Court has the authority to "grant temporary and final injunctions on

such terms as it may deem reasonable to prevent or restrain violations" of unauthorized publication or use of radio communications. 47 U.S.C. § 605(e)(3)(B)(i). An injunction is an extraordinary remedy that should only be granted if Plaintiff suffered an irreparable injury and the legal remedies available are inadequate. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). An irreparable injury is defined as one which "cannot be undone through monetary remedies." *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981).

District courts within the Fifth Circuit often grant requests for permanent injunctions in this type of case, holding such "relief to be reasonable." *See KingVision Pay-Per-View, Ltd. v. Guerra*, Civil Action No. H-07-1822, 2007 WL 3001659, at *2 (S.D. Tex. Oct. 12, 2007); *see also J & J Sports Prods., Inc. v. Flores*, Civil Action No. H-09-2220, 2009 WL 4801520, at *2 (S.D. Tex. Dec. 11, 2009). Further, district courts outside the Fifth Circuit have found that monetary damages alone are inadequate to prevent future piracy. *See Dish Network L.L.C. v. Rounds*, Civil Action No. 11-241 Erie, 2012 WL 1158798, at *5 (W.D. Pa. Apr. 6, 2012) (citing *DISH Network L.L.C. v. DelVecchio*, No. 11-CV-06297-CJS, 2011 WL 4747848, at *6 (W.D.N.Y. Oct. 7, 2011)). These courts reason that permanent injunctions would pose a minimal burden on defendants, since the injunction's only function "would be to prevent [defendants] from engaging in further illegal activity." *DelVecchio*, 2011 WL 4747848, at *6. However, a district court in the Eastern District of New York denied a request for a permanent injunction when a plaintiff failed to affirmatively demonstrate that it was entitled to injunctive relief. *J & J Sports Prods. Inc. v. Lopez*, No. 05-CV-5799 (JG) (RER), 2006 WL 2355851, at *5 (E.D.N.Y. June 8, 2006), *adopted by* No. 05-CV-5799 JG, 2006 WL 2375494 (Aug. 14, 2006). That court reasoned that, without evidence showing irreparable harm or that statutory and enhanced damages under § 605 were insufficient to deter future violations of the FCA, a

plaintiff could not satisfy the conditions for issuing a permanent injunction.  *Id.*

This Court agrees with the reasoning in *Lopez*.  The Court finds it hard to believe that an award of $4,500.00 in damages is insufficient to make Plaintiff whole, especially considering the fact that Plaintiff's evidence demonstrates that at most five patrons viewed the illegal telecast in Defendant's Establishment on September 17, 2011.  *See Fed. Deposit Ins. Co. v. Faulkner*, 991 F.2d 262, 265 (5th Cir. 1993) (stating that "the availability of a legal remedy often indicates that an applicant's injury is not irreparable").  Additionally, Plaintiff has presented no evidence that it cannot be made whole by the Court's damages award.  *See Lopez*, 2006 WL 2355851, at *5.

Further, the Court finds that the reasoning in *DelVecchio* counsels against issuing a permanent injunction, rather than supports issuing a permanent injunction.  If a permanent injunction's only function "would be to prevent [defendants] from engaging in further illegal activity," then an injunction would be redundant, as the FCA already prohibits such illegal activity.  *See DelVecchio*, 2011 WL 4747848, at *6.  The Court refuses to issue an injunction on the presumption that § 605 of the FCA is insufficient to deter illegal conduct and must be supplemented by a permanent injunction.  There are no unusual facts in this Case that would warrant such an extraordinary remedy.  Accordingly, the Court denies Plaintiff's request for a permanent injunction.

### III.   CONCLUSION

For the foregoing reasons, the Court enters the following orders:

1. It is hereby **ORDERED** that Plaintiff's Motion, ECF No. 8, is **GRANTED** in part.

2. Default judgment is **ENTERED** against Maria Olivia Rivera individually and d/b/a Horizon Nite Club.  Defendant **SHALL** pay J&J Sports Productions, Inc.:

   a. **$2,300.00** in statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II);

   b. **$2,200.00** in enhanced damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii); and

   c. **$1,000.00** in reasonable attorneys' fees pursuant to 47 U.S.C. § 605(e)(3)(B)(iii).

3. In total, the court **GRANTS** default judgment in favor of J&J Sports Productions, Inc. against Maria Olivia Rivera individually and d/b/a Horizon Nite Club in the amount of $5,500.00.

4. **IT IS FURTHER ORDERED** that Maria Olivia Rivera individually and d/b/a Horizon Nite Club SHALL pay post-judgment interest at the rate of 0.25%, until paid in full, to be compounded annually pursuant to the provisions of 28 U.S.C. § 1961(b).

5. **IT IS FURTHER ORDERED** that the Clerk **SHALL** close the Case.

**SO ORDERED.**

**SIGNED this 12th day of March, 2015.**

*[signature: Kathleen Cardone]*

KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE